1

2

3

4

5                        UNITED STATES DISTRICT COURT
                       WESTERN DISTRICT OF WASHINGTON
6                                 AT TACOMA

7

8    HOOD CANAL SAND AND GRAVEL,
     LLC,                                          CASE NO. C14-5620 BHS
9
                            Plaintiff,             ORDER GRANTING
10                                                 DEFENDANTS' MOTION TO
              v.                                   DISMISS
11
     MICHAEL D. BRADY, et al.,
12
                            Defendants.
13

14         This matter comes before the Court on Defendants Michael Brady, Ray Mabus,

15   the Department of Navy, and the United States of America's ("Federal Defendants")

16   motion to dismiss (Dkt. 38).  The Court has considered the pleadings filed in support of

17   and in opposition to the motion and the remainder of the file and hereby grants the

18   motion for the reasons stated herein.

19                  **I. PROCEDURAL AND FACTUAL BACKGROUND**

20         On July 7, 2014, the United States Navy acquired an easement from the State of

21   Washington.  Dkt. 34 ("Comp.") ¶ 1.  The easement encompasses portions of state-owned

22   aquatic lands located on the bed of the Hood Canal ("bedlands").  *Id.*  Plaintiff Hood

Canal Sand and Gravel, LLC ("Hood Canal") owns property adjacent to the bedlands. *Id.*
¶ 2.  Although the easement does not physically encroach on Hood Canal's property, the
easement blocks Hood Canal's ability to construct a pier for shipping sand and gravel
products. *Id.* ¶¶ 14, 70.  Federal Defendants did not prepare an environmental impact
statement or an environmental assessment before acquiring the easement. *Id.* ¶ 53.

On August 4, 2014, Hood Canal filed suit against Federal Defendants, as well as
Defendants Peter Goldmark, Washington State Department of Natural Resources, and
State of Washington ("State Defendants").  Dkt. 1.  On August 27, 2014, State
Defendants moved to dismiss on Eleventh Amendment immunity grounds.  Dkt. 10.  On
October 22, 2014, the Court dismissed all claims against State Defendants and directed
Hood Canal to amend its complaint.  Dkt. 20.

On November 6, 2014, Hood Canal filed a second amended complaint against
Federal Defendants.  Dkt. 23.  On February 12, 2015, Federal Defendants moved to
dismiss.  Dkt. 29.  On April 13, 2015, the Court dismissed some of Hood Canal's claims
with prejudice and granted Hood Canal leave to amend the remaining claims.  Dkt. 33.

On April 24, 2015, Hood Canal filed its third amended complaint.  *See* Comp.
Hood Canal asserts three claims: (1) Federal Defendants exceeded their authority under
10 U.S.C. § 2663(c) when they purchased the easement and therefore acted arbitrarily
and capriciously under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701; (2)
Federal Defendants violated Hood Canal's right to equal protection; and (3) Federal
Defendants violated the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4332,

by not preparing an environmental impact statement before purchasing the easement. *Id.* ¶¶ 73–98.

On May 22, 2015, Federal Defendants moved to dismiss. Dkt. 38. On June 22, 2015, Hood Canal responded. Dkt. 40. On June 26, 2015, Federal Defendants replied. Dkt. 41.

## II. DISCUSSION

Federal Defendants seek to dismiss Hood Canal's claims for lack of subject matter jurisdiction and for failure to state a claim. Dkt. 29.

**A.      Rule 12(b)(1)**

Rule 12(b)(1) provides for dismissal of claims based on lack of subject matter jurisdiction. "Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "A federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." *A-Z Int'l v. Phillips*, 323 F.3d 1141, 1145 (9th Cir. 2003). Courts lack subject matter jurisdiction over actions in which the plaintiff lacks standing. *See Bernhardt v. County of Los Angeles*, 279 F.3d 862, 868 (9th Cir. 2002). The plaintiff bears the burden of establishing jurisdiction. *Sopcak v. N. Mountain Helicopter Serv.*, 52 F.3d 817, 818 (9th Cir. 1995).

**B.      Rule 12(b)(6)**

Motions to dismiss brought under Rule 12(b)(6) may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under such a theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). Material allegations are taken as admitted and the complaint is construed in the plaintiff's favor.

*Keniston v. Roberts*, 717 F.2d 1295, 1301 (9th Cir. 1983).  To survive a motion to dismiss, the complaint does not require detailed factual allegations but must provide the grounds for entitlement to relief and not merely a "formulaic recitation" of the elements of a cause of action.  *Twombly*, 127 S. Ct. at 1965.  Plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 1974.

Generally, the scope of review on a motion to dismiss is limited to the contents of the complaint. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).  The Court, however, may consider documents that are not attached to the complaint "if the documents' authenticity . . . is not contested and the plaintiff's complaint necessarily relies on them." *Id.* (internal quotation marks omitted).  Hood Canal references the easement numerous times throughout its amended complaint. *See generally* Comp. Because the easement's authenticity is not disputed and Hood Canal's amended complaint necessarily relies on it, the Court will consider the easement in connection with this motion.

**C.    10 U.S.C. § 2663 Claim**

Hood Canal alleges that Federal Defendants exceeded their authority under 10 U.S.C. § 2663(c) when they acquired the easement.  Comp. ¶¶ 73–79.  Because § 2663(c) does not create a private cause of action, Hood Canal brings suit under the APA, which provides a cause of action for persons "adversely affected or aggrieved by agency action within the meaning of a relevant statute."  5 U.S.C. § 702.  Federal Defendants argue that Hood Canal lacks prudential standing to bring this claim because Hood Canal has not alleged an interest within the zone of interests protected by § 2663(c).  Dkt. 38 at 6–9.

1    "[I]n addition to constitutional standing requirements, under the APA a plaintiff

2    must assert an interest 'arguably within the zone of interests to be protected or regulated

3    by the statute or constitutional guarantee in question.'"   *Nevada Land Action Ass'n v.

4    U.S. Forest Serv.*, 8 F.3d 713, 715–16 (9th Cir. 1993) (quoting *Assoc. of Data Processing*

5    *Serv. Org., Inc. v. Camp*, 397 U.S. 150, 153 (1970)).   "The purpose of the 'zone of

6    interests' test is 'to exclude those plaintiffs whose suits are more likely to frustrate rather

7    than further statutory objectives.'"   *Id.* at 716 (quoting *Clarke v. Sec. Indus. Ass'n*, 479

8    U.S. 388, 397 n.12 (1987)).   The test "is not meant to be especially demanding," and "the

9    benefit of any doubt goes to the plaintiff."   *Match-E-Be-Nash-She-Wish Band of*

10   *Pottawatomi Indians v. Patchak*, 132 S. Ct. 2199, 2210 (2012).   Nevertheless, the zone of

11   interests test forecloses suit "when a plaintiff's 'interests are so marginally related to or

12   inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed

13   that Congress intended to permit the suit.'"   *Id.* (quoting *Clarke*, 479 U.S. at 399).

14        The focal point of the zone of interests test is "the statute whose violation is the

15   gravamen of the complaint."   *Wild Fish Conservancy v. Jewell*, 730 F.3d 791, 797 (9th

16   Cir. 2013) (quoting *Air Courier Conf. of Am. v. Am. Postal Workers Union, ALF-CIO*,

17   498 U.S. 517, 529 (1991)).   Here, the relevant statute is 10 U.S.C. § 2663(c).   *See* Comp.

18   ¶¶ 73–79.

19        The Court is not aware of any case applying the zone of interests test to § 2663(c),

20   and the parties have cited none.   The Court must therefore look to the "obvious purpose"

21   of § 2663(c), *Bennett v. Spear*, 520 U.S. 154, 176 (1997), and determine whether Hood

22

1   Canal's interests "are among the *sorts* of interests [the statute was] specifically designed

2   to protect." *Lujan v. Nat'l Wildlife Foundation*, 497 U.S. 871, 886 (1990).

3          Section 2663(c) provides, in relevant part, that military departments may acquire

4   interests in land needed for national defense without first obtaining specific authorization

5   from Congress, provided that the acquisition does not exceed $750,000.  10 U.S.C.

6   § 2663(c)(1).  The statute was intended to streamline the military's acquisition of smaller

7   interests in land by reducing paperwork and administrative expenses.[1]  *See Military*

8   *Public Works: Hearing on H.R. 8625 and H.R. 9893 Before the H. Comm. on Armed*

9   *Services*, 84th Cong. 6766 (1956); *Military Public Works Construction: Hearing on S.*

10  *3122 Before the Subcomm. on Real Estate and Military Construction of the Comm. on*

11  *Armed Servs.*, 84th Cong. 771 (1956); H.R. Rep. No. 84-1890, at 22 (1956); S. Rep. No.

12  84-2364, at 26 (1956).

13         In this case, the Court finds that Hood Canal has not alleged an interest that falls

14  within the zone of interests protected by § 2663(c).  Hood Canal alleges that Federal

15  Defendants' acquisition of the easement blocks Hood Canal's ability to construct a pier.

16  Comp. ¶ 70.  Nothing in the statute or its legislative history indicates that § 2663(c) was

17  designed to protect Hood Canal's interests.  Although the zone of interests test is not

18  especially demanding, the Court cannot conclude that Hood Canal's interests in this case

19  _____

20         [1] Section 2663(c) originally appeared as part of 10 U.S.C. § 2672.  *See* National Defense
    Authorization Act for Fiscal Year 2006, Pub. L. No. 109–163, § 2821(a), 119 Stat. 3136 (2006);

21  *United States v. 32.42 Acres of Land*, 683 F.3d 1030, 1034 n.1 (9th Cir. 2012).  Thus, the
    relevant legislative history for § 2663(c) is that associated with § 2672.  The Court may take

22  judicial notice of a statute's legislative history.  *Ass'n des Eleveurs de Canards et d'Oies du*
    *Quebec v. Harris*, 729 F.3d 937, 945 n.2 (9th Cir. 2013).

1    are marginally related to the purpose of § 2663(c).  Accordingly, Hood Canal lacks

2    prudential standing to pursue an APA claim based on § 2663(c).

3         Hood Canal argues that the Supreme Court's holding in *Patchak* compels a

4    different result.  Dkt. 40 at 11.  In *Patchak*, the Secretary of the Interior decided to

5    acquire property for a tribal casino under the Indian Reorganization Act ("IRA").  132 S.

6    Ct. at 2203.  Patchak, the owner of nearby property, brought suit under the APA, arguing

7    that the Secretary's decision violated the IRA.  *Id.* at 2202–03.  Patchak contended that he

8    had prudential standing based on environmental, aesthetic, and economic harms.  *Id.* at

9    2203.  The government argued that Patchak's interests were not within the zone of

10   interests protected by the IRA, which focused on land acquisition.  *Id.* at 2210.  The

11   Supreme Court rejected this argument, finding that the IRA dealt with land use generally,

12   and required the Secretary to consider "potential conflicts of land use which may arise"

13   from acquisitions.  *Id.* at 2211.  Because the IRA encompassed land use, the Court held

14   that Patchak's interests fell within the statute's zone of interests.  *Id.* at 2212.

15        Unlike the plaintiff in *Patchak*, Hood Canal's interests do not fall within the zone

16   of interests protected by § 2663(c).  The statute in *Patchak* required the government to

17   consider interests like those asserted by Patchak.  Hood Canal has cited no provision of

18   § 2663(c) that requires the government to consider potential conflicts of land use that

19   may arise from acquiring land for national defense purposes.  Because Hood Canal has

20   not alleged an interest within the zone of interests protected by § 2663, the Court grants

21   Federal Defendants' motion and dismisses this claim.

22

**D.    Equal Protection Claims**

Hood Canal alleges two equal protection violations.[2]  Comp. ¶¶ 80–93.  First,

Hood Canal asserts that Federal Defendants discriminated against Hood Canal by not

expressly excluding Hood Canal's pending lease application from the easement's

restrictions when other pending leases and a pending easement were expressly excluded.

*Id.* ¶ 93.  Second, Hood Canal alleges that the easement discriminates against commercial

docks and associated vessel traffic while allowing residential docks and associated vessel

traffic.  *Id.* ¶¶ 84, 90.  Federal Defendants argue that Hood Canal has failed to state any

equal protection claim.  Dkt. 38 at 10–17; Dkt. 41 at 4–8.

**1.    Class of One Claim**

Hood Canal's first equal protection claim is a "class of one" claim.  *See Engquist*

*v. Or. Dep't of Agric.*, 553 U.S. 591, 601 (2008) ("[A]n equal protection claim can in

some circumstances be sustained even if the plaintiff has not alleged class-based

discrimination, but instead claims that she has been irrationally singled out as a so-called

'class of one.'"); *N. Pacifica LLC v. City of Pacifica*, 526 F.3d 478, 486 (9th Cir. 2008)

("When an equal protection claim is premised on unique treatment rather than on a

classification, the Supreme Court has described it as a 'class of one' claim.").  To state a

class of one claim, Hood Canal must allege that Federal Defendants "intentionally treated

[Hood Canal] differently from others similarly situated and that there is no rational basis

---

[2] The Fifth Amendment applies to actions of the federal government.  *Lee*, 250 F.3d at 687.  Although the Fifth Amendment contains no equal protection clause, the Court's approach to Fifth Amendment equal protection claims is "precisely the same as to equal protection claims under the Fourteenth Amendment."  *Weinberger v. Wiesenfeld*, 420 U.S. 636, 638 n.2 (1975).

1  for the difference in treatments."  *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)

2  (per curiam).

3       To support its class of one claim, Hood Canal alleges that Federal Defendants

4  acquired the easement to intentionally prevent Hood Canal from developing its pier.

5  Comp. ¶ 81.  Hood Canal further alleges that it is similarly situated to the parties whose

6  pending leases were excluded from the easement's restrictions and that there is no

7  rational basis for not excluding Hood Canal's pending lease application from the

8  easement's restrictions.  *Id.* ¶¶ 71, 93.

9       Contrary to Hood Canal's assertions, Hood Canal is not similarly situated to the

10  other lease applicants.  The easement excludes pending leases for geoduck culture,

11  aquaculture, wet storage, and a salmon pen.  Dkt. 38, Ex. A at 21–24.  None of these

12  pending leases contemplates the construction of a pier.  *See id.*  Thus, Hood Canal is not

13  sufficiently comparable to the other lease applicants.  *See Thorton v. City of St. Helens*,

14  425 F.3d 1158, 1167–68 (9th Cir. 2005) (finding businesses that engaged in different land

15  uses were not similarly situated for class of one claim); *see also Ruston v. Town Bd. for*

16  *the Town of Skaneateles*, 610 F.3d 55, 59 (2d Cir. 2010) ("Class-of-one plaintiffs must

17  show an extremely high degree of similarity between themselves and the persons to

18  whom they compare themselves."); *Purze v. Village of Winthrop Harbor*, 286 F.3d 452,

19  455 (7th Cir. 2002) ("[Class of one plaintiffs] must demonstrate that they were treated

20  differently than someone who is *prima facie* identical in all relevant respects.").  Because

21  Hood Canal is not similarly situated to the parties whose pending leases were excluded

22

1  from the easement's restrictions, the Court grants Federal Defendants' motion and

2  dismisses this claim.

3       **2.**     **Classification Claim**

4       Hood Canal's second equal protection claim is a "classification" claim.  Analysis

5  of an equal protection claim alleging improper classification involves two steps.  *United*

6  *States v. Lopez-Flores*, 63 F.3d 1468, 1472 (9th Cir. 1995).  The first step is to identify

7  the classification.  *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1187 (9th Cir. 1995).

8  "To accomplish this, a plaintiff can show that the law is applied in a discriminatory

9  manner or imposes different burdens on different classes of people."  *Id.*  The next step is

10  to identify the proper level of scrutiny.  *Id.*  "[U]nless a classification warrants some form

11  of heightened review because it jeopardizes exercise of a fundamental right or categorizes

12  on the basis of an inherently suspect characteristic, the Equal Protection Clause requires

13  only that the classification rationally further a legitimate state interest."  *Nordlinger v.*

14  *Hahn*, 505 U.S. 1, 10 (1992).

15       To support its classification claim, Hood Canal alleges that the easement

16  discriminates against commercial docks and associated vessel traffic while allowing

17  residential docks and associated vessel traffic.  Comp. ¶¶ 84, 90.  Although the easement

18  does not facially regulate vessel traffic, it is uncontested that the easement differentiates

19  between types of development.  *See* Dkt. 38, Ex. A at 5–6.  The easement prohibits

20  "residential, scientific, commercial and industrial uses on the [bedlands] . . . beyond those

21  presently established on the site or as allowed under Section 7."  *Id.* at 5.  Section 7, in

22  turn, permits "private recreational docks or mooring buoys associated with residential

1   uses on abutting parcels per RCW 79.105.430." *Id.* at 7.  Nevertheless, the easement

2   prohibits any activity or use of the bedlands that is inconsistent with the easement's

3   purpose. *Id.* at 5.  The easement's express purpose is "to limit future improvement,

4   development, or use of the [bedlands] in a manner that would be incompatible" with

5   Federal Defendants' military operations and the preservation of the bedlands.  *Id.* at 4.

6        Because Hood Canal does not allege that Federal Defendants discriminated against

7   a suspect class, rational basis scrutiny applies.  *S. Pac. Transp. Co. v. City of Los Angeles*,

8   922 F.2d 498, 507 (9th Cir. 1990).  As other courts have recognized, "rational basis

9   review at the motion to dismiss stage poses unique challenges." *HSH, Inc. v. City of El*

10   *Cajon*, 44 F. Supp. 3d 996, 1008 (S.D. Cal. 2014) (quoting *Immaculate Heart Central*

11   *Sch. v. N.Y. State Pub. High Sch. Athletic Ass'n*, 797 F. Supp. 2d 204, 211 (N.D.N.Y.

12   2011)).  To avoid a Rule 12(b)(6) dismissal, a plaintiff must allege sufficient facts to state

13   a plausible claim for relief. *Twombly*, 127 S. Ct. at 1974.  The Court must accept all

14   factual allegations in the complaint as true and must construe those facts in the plaintiff's

15   favor. *Lee*, 250 F.3d at 688.  Meanwhile, under rational basis review, the Court must

16   uphold a government classification "if there is any reasonably conceivable state of facts

17   that could provide a rational basis for the classification." *F.C.C. v. Beach Commc'ns,*

18   *Inc.*, 508 U.S. 307, 313 (1993).  The government also has no obligation to provide

19   evidence to sustain the rationality of a classification. *Heller v. Doe*, 509 U.S. 312, 320

20   (1993).  Rather, the burden is on the plaintiff "to negative every conceivable basis which

21   might support" the classification. *Id.*

22

1    Hood Canal asserts that there is no rational basis for Federal Defendants to

2    conclude that commercial vessel traffic is a threat to its military operations.  Comp.

3    ¶¶ 42, 86, 91–92.  Federal Defendants argue that the easement's distinction between

4    types of development is rationally related to a legitimate government interest.  Dkt. 41 at

5    5–6.  Specifically, Federal Defendants contend that commercial and industrial

6    development would likely increase large vessel traffic, which in turn would negatively

7    impact military operations and conservation efforts.  *Id.*

8    In this case, the Court finds that the easement's distinction between types of

9    development passes rational basis review.  The easement's limitation on commercial and

10   industrial development bears a rational relation to preventing the disruption of military

11   operations and preserving the bedlands—two legitimate government interests.  A

12   government classification "does not fail rational-basis review because it is not made with

13   mathematical nicety or because in practice it results in some inequality."  *Heller*, 509

14   U.S. at 321.  The Court grants Federal Defendants' motion and dismisses this claim.

15   **E.    NEPA Claim**

16   Finally, Hood Canal alleges that Federal Defendants violated NEPA by failing to

17   prepare an environmental impact statement before purchasing the easement.  Comp.

18   ¶¶ 95–98.  Federal Defendants argue that Hood Canal's NEPA claim should be dismissed

19   because Hood Canal lacks both Article III standing and prudential standing.  Dkt. 29 at

20   21 & n.13.

21

22

1          **1.      Article III Standing**

2          "Article III of the Constitution limits the judicial power of the United States to the

3    resolution of 'Cases' and 'Controversies,' and 'Article III standing . . . enforces the

4    Constitution's case-or-controversy requirement.'"   *Hein v. Freedom From Religion*

5    *Foundation, Inc.*, 551 U.S. 587, 597–98 (2007) (quoting *DaimlerChrysler Corp. v. Cuno*,

6    547 U.S. 332, 342 (2006)).   To establish Article III standing, a plaintiff must show that:

7    (1) it suffered an injury in fact; (2) the injury is fairly traceable to the challenged conduct;

8    and (3) the injury is likely to be redressed by a favorable decision.   *Friends of the Earth,*

9    *Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000).

10          Hood Canal brings a procedural claim under NEPA, alleging that Federal

11   Defendants failed to prepare an environmental impact statement before acquiring the

12   easement.   Comp. ¶ 97.   "To satisfy the injury in fact requirement, a plaintiff asserting a

13   procedural injury must show that 'the procedures in question are designed to protect

14   some threatened concrete interest of his that is the ultimate basis of his standing.'"

15   *Cantrell v. City of Long Beach*, 241 F.3d 674, 679 (9th Cir. 2001) (quoting *Lujan*, 504

16   U.S. at 573 n.8).   "Once a plaintiff has established an injury in fact under NEPA, the

17   causation and redressability requirements are relaxed."   *Id.* at 682.

18          Hood Canal alleges two concrete interests to support its NEPA claim.   First, Hood

19   Canal alleges that it is unable to construct a pier for shipping sand and gravel products.

20   Comp. ¶¶ 14, 70; Dkt. 40 at 25.   Second, Hood Canal alleges that air and water pollution

21   will increase if Hood Canal cannot build its proposed pier because truck traffic "would

22   likely" increase to serve the regional sand and gravel market.   Comp. ¶¶ 28–29, 97.

1  Neither of these interests is sufficient to establish Article III standing for Hood Canal's

2  NEPA claim.

3        Hood Canal's first interest—the inability to build a pier—is not an interest

4  protected by NEPA.  NEPA "is directed at environmental concerns, not at business

5  interests." *Ashley Creek Phosphate Co. v. Norton*, 420 F.3d 934, 939 (9th Cir. 2005).

6  Thus, a plaintiff asserting a procedural injury under NEPA must allege a concrete

7  environmental interest, such as an aesthetic or recreational interest, rather than a business

8  interest.  *See City of Sausalito v. O'Neill*, 386 F.3d 1186, 1197 (9th Cir. 2004).  Hood

9  Canal's inability to build a pier is not an interest that NEPA was enacted to protect.

10       Although Hood Canal's second interest—potential air and water pollution if truck

11 traffic increases—concerns the environment, it is not a concrete interest.  The fact that

12 Hood Canal is seeking to enforce a procedural right does not affect the injury in fact

13 analysis.  *Cantrell*, 241 F.3d at 679.  Hood Canal must still show the "invasion of a

14 legally protected interest" that is "concrete and particularized" and "actual or imminent,

15 not 'conjectural' or 'hypothetical.'"  *Lujan*, 504 U.S. at 560 (internal citations omitted).

16 Hood Canal's allegations regarding increased trucking and increased pollution are

17 hypothetical and conjectural.  *See* Comp. ¶¶ 28–29, 97.  Because Hood Canal has failed

18 to allege a concrete environmental interest to support its NEPA claim, Hood Canal has

19 failed to establish Article III standing.

20       **2.     Prudential Standing**

21       "In addition to [Article III standing] requirements, a plaintiff bringing suit under

22 the Administrative Procedure Act for a violation of NEPA must show that his alleged

1    injury falls within the 'zone of interests' that NEPA was designed to protect." *Cantrell*,

2    241 F.3d at 679.  As noted above, NEPA was enacted to protect the environment.  Thus,

3    "a plaintiff must allege injury to the environment; economic injury will not suffice."

4    *Ranchers Cattleman Action Legal Fund United Stockgrowers of Am. v. U.S. Dep't of*

5    *Agric.*, 415 F.3d 1078, 1103 (9th Cir. 2005).

6           For the reasons discussed above, Hood Canal's inability to build a pier does not

7    fall within NEPA's zone of interests.  *See Ashley Creek*, 420 F.3d at 939.  With regard to

8    Hood Canal's interest in transporting sand and gravel resources in an environmentally

9    sound manner, Federal Defendants contend that this interest is merely an economic

10   interest in disguise because it concerns how Hood Canal operates its business.  Dkt. 41 at

11   12–13.

12          Even assuming Hood Canal's interest in ensuring sand and gravel is transported in

13   an environmentally sound manner is sufficient to establish prudential standing under

14   NEPA, Hood Canal's claim is still subject to dismissal because NEPA does not require

15   an environmental impact statement for federal actions that maintain the environmental

16   status quo.  *See Douglas County v. Babbitt*, 48 F.3d 1495, 1505 (9th Cir. 1995) ("[A]n

17   [environmental impact statement] is unnecessary when the action at issue does not alter

18   the natural, untouched physical environment at all.");  *United States v. 0.95 Acres of Land*,

19   994 F.2d 696, 699 (9th Cir. 1993) ("The filing of the condemnation action and the

20   subsequent transfer of legal title are not major Federal actions significantly affecting the

21   environment." (internal quotation marks omitted));  *Sabine River Authority  v. U.S. Dep't*

22   *of Interior*, 951 F.2d 669, 680 (5th Cir. 1992) ("The acquisition of a negative easement

1  which prohibits development does not result in the requisite 'change' to the physical

2  environment.").

3       The easement at issue in this case does not alter the physical environment.  In

4  conveying the easement to Federal Defendants, the State of Washington noted that it

5  wanted "to protect a variety of conservation values, including but not limited to, native

6  species and species assemblages, ecological systems . . . and marine, tidal and upland

7  natural features . . . ."  Dkt. 38, Ex. A at 4.  The easement's stated purpose is "to limit

8  future improvement, development, or use of the [bedlands] in a manner that would be

9  incompatible" with Federal Defendants' military operations and the preservation of the

10  bedlands.  *Id.*  The easement therefore prohibits "[t]he placement or construction . . . of

11  any buildings, structures, or other improvements of any kind . . . ."  *Id.* at 5.  Indeed,

12  Hood Canal acknowledges in its amended complaint that the easement prohibits future

13  development of the bedlands.  *See* Comp. ¶¶ 1, 69–70.  Because the easement in this case

14  prohibits development and does not change the physical environment, NEPA does not

15  require an environmental impact statement. *See Douglas Cty.*, 48 F.3d at 1505; *Sabine*

16  *River Authority*, 951 F.2d at 680.  The Court grants Federal Defendants' motion and

17  dismisses this claim.

18  **F.    Leave to Amend**

19       Leave to amend shall be freely given when justice so requires.  Fed. R. Civ. P.

20  15(a).  "If the underlying facts or circumstances relied upon by a plaintiff may be a

21  proper subject of relief, he ought to be afforded an opportunity to test his claim on the

22  merits."  *Foman v. Davis*, 371 U.S. 178, 182 (1962).  On a Rule 12(b)(6) motion, "a

district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). The Court's "discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint." *City of Los Angeles v. San Pedro Boat Works*, 635 F.3d 440, 454 (9th Cir. 2011).

Here, Hood Canal has not requested leave to amend. *See* Dkt. 40. The Court previously granted Hood Canal leave to amend after Federal Defendants' first motion to dismiss. Dkt. 33 at 11. In the Court's discretion, the Court declines to provide Hood Canal with another opportunity to amend its complaint.

## III. ORDER

Therefore, it is hereby **ORDERED** that Federal Defendants' motion to dismiss (Dkt. 38) is **GRANTED**. The Clerk shall close this case.

Dated this 1st day of September, 2015.

BENJAMIN H. SETTLE
United States District Judge